UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL KELLY LUKENS,

    Plaintiff,

v.                              Case No. 8:21-cv-2606-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to sufficiently evaluate the opinion of Plaintiff's mental health provider, Ilona Dale Reuter, ARNP. As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    I.    *Background*

Plaintiff, who was born in 1980, claimed disability beginning June 30, 2018 (Tr. 213-19). He was 38 years old on the alleged onset date. Plaintiff completed two years of college, and his past relevant work experience included work as a police officer and a composite job composed of an office manager and parts clerk (Tr. 19, 36-38, 245).

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

Plaintiff alleged disability due to herniated discs in his back, arthritis in his hips and hands, spinal stenosis, degenerative disc disease, depression, anxiety, insomnia, and sleep apnea (Tr. 244).

Given his alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 213-19). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 61-111, 117-37). Plaintiff then requested an administrative hearing (Tr. 144-45). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 27-58). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-26).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since June 30, 2018, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lumbar spine injury, status post-laminectomy and fusion with mild residual canal stenosis; sleep apnea; obesity; bilateral hip osteoarthritis; depression; bipolar disorder; and generalized anxiety disorder (Tr. 12). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following additional

limitations: could occasionally lift 20 pounds and frequently lift and carry 10 pounds; could stand or walk for six hours and sit for six hours in an eight-hour workday with normal breaks; could not climb ropes, scaffolds, or ladders; could occasionally climb ramps and one flight of stairs; could occasionally balance, as defined in the Dictionary of Occupational Titles; could occasionally stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, heat, and wetness; must avoid all hazards; must have the option to alternate between sitting and standing every 30 minutes; could understand, remember, carry out, and otherwise perform simple tasks and instructions (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), however, the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 19). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a routing clerk, a marker, and an order caller (Tr. 20-21). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 21). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied (Tr. 1-6, 207-09). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

    *II.*    *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or

her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to

determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

    III.    *Discussion*

Plaintiff argues that the ALJ erred by failing to properly consider the opinion evidence from ARNP Reuter pertaining to Plaintiff's mental impairments and limitations. In April 2021, ARNP Reuter completed a mental capacity assessment identifying several limitations stemming from Plaintiff's mental impairments (Tr. 679-86). ARNP Reuter indicated that Plaintiff experienced slight limitations in his ability to understand and remember detailed instructions, make simple work-related decisions, and perform at a consistent pace with a standard number and length of rest periods (Tr. 680-81). In addition, ARNP Reuter opined that Plaintiff would experience moderate limitations in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday without interruption from psychologically based symptoms; complete a normal work week without interruptions from psychologically based symptoms; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and travel to unfamiliar

places or use public transportation (Tr. 680-83). Significantly, ARNP Reuter concluded that Plaintiff would experience marked limitations in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors and would be absent an average of three or more days per month due to psychologically based symptoms and treatment (Tr. 681-82). ARNP Reuter based her opinion regarding Plaintiff's marked limitations on Plaintiff's subjective complaints and her own clinical observations and noted that the following positive clinical findings demonstrated and supported her diagnosis of Plaintiff's bipolar disorder and severe depression: sleep disturbance, mood disturbance, emotional lability, recurrent panic attacks, social withdrawal and isolation, decreased energy, manic periods and episodes, psychomotor agitation or retardation, feelings of guilt and worthlessness, and generalized, persistent anxiety (Tr. 683-84). In response to a question inquiring as to whether Plaintiff had experienced any involuntary hospitalizations or been the subject of a Baker Act, ARNP Reuter responded in the affirmative, noting Plaintiff's 2020 involuntary hospitalization (Tr. 683).

Following the determination at step two of the sequential analysis that Plaintiff suffered from the severe impairments of depression, bipolar disorder, and generalized anxiety disorder, the ALJ found at step three that Plaintiff's mental impairments caused moderate limitations in Plaintiff's ability to understand, remember, or apply information and only mild limitations in Plaintiff's ability to interact with others; to concentrate, persist, or maintain pace; and to adapt or manage himself (Tr. 12-14).

Then, at step four, in considering ARNP Reuter's opinion, the ALJ concluded that the assessment was "inadequately support[ed] and inconsistent with the record evidence as a whole" as the assessment failed to redress the clinical findings that showed improvement with mood stability and anxiety after June 2020 (Tr. 18-19). The ALJ explained that ARNP Reuter endorsed potentially disabling limitations in mental function, with moderate to marked limitations in concentration and social interactions, but the assessment generally cited to Plaintiff's 2020 in-patient admission without redressing the subsequent course of care showing improvement in symptom control within 12 months (Tr. 18).

Plaintiff contends that the ALJ's consideration of ARNP Reuter's opinion was not supported by substantial evidence because the evidence of record showed that Plaintiff's symptoms improved during some visits but were more severe at other times, such that it was reasonable for ARNP Reuter to conclude that Plaintiff would have three or more absences from the workplace every month and that Plaintiff would experience moderate limitations in his abilities to complete a normal workday and workweek without interruption from psychological symptoms. Plaintiff takes issue with the ALJ's suggestion that Plaintiff experienced significant improvement since the June 2020 involuntary hospitalization since the treatment notes indicated that Plaintiff's symptoms had improved during some appointments, but, during other appointments, Plaintiff's anxiety, mania, and depression appeared more severe. Given the variation in Plaintiff's presentation during appointments, Plaintiff asserts that the

ALJ should have taken into consideration the episodic nature of Plaintiff's bipolar disorder, and the failure to do so constitutes reversible error.

As Plaintiff argues, the Eleventh Circuit has squarely addressed the episodic nature of bipolar disorder in three recent decisions and has held that when a claimant suffers from bipolar disorder, an RFC assessment must consider its episodic nature. *See Simon v. Comm'r of Soc. Sec.*, 7 F.4th 1094, 1107-09 (11th Cir. 2021); *Samuels v. Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1267-68 (11th Cir. 2019).[2] While the ALJ in this case found Plaintiff's bipolar disorder a severe impairment at step two, it is unclear whether the ALJ properly considered its episodic nature in crafting the RFC. The sole paragraph in the RFC discussion addressing Plaintiff's mental impairments reads as follows:

> Mentally, the evidence does not suggest significant limitations in most of the paragraph "B" areas of function. However, the evidence as a whole does suggest moderate limitations in understanding, remembering and applying information, and the claimant has endorsed additional symptoms such as daytime somnolence from sleep apnea, drowsiness and reduced cognitive acuity from medication side effects, and generalized mental disruption from pain symptoms. The undersigned finds it reasonable to conclude the combined effects of these issues would prevent the claimant from performing more than simple tasks and instructions on a regular and continuing basis. Greater mental restrictions are not warranted due to the large body of evidence showing grossly normal mental function during the majority of the period at issue.

---

[2] The Commissioner argues that this line of cases does not govern because the Eleventh Circuit decided the opinions under the prior regulations, which applied the so-called "treating physician rule" (Doc. 18, at 11-12 n.3). These cases discuss the appropriate consideration of mental impairments, including the episodic nature of bipolar disorder, and therefore are instructive as to the issues presented on this appeal.

(Tr. 17-18) (internal citations omitted). The RFC discussion failed to address the episodic nature of Plaintiff's bipolar disorder, especially considering examination findings showing that Plaintiff presented as manic and restless and would, during some appointments, present with symptoms of depression and anxiety and, during other appointments, report no or limited symptoms. The decision also does not make clear whether the ALJ properly considered Plaintiff's other mental impairments, including his anxiety and depression, and the variability of the related symptoms in setting forth the RFC. Given the lack of clarity as to those issues, it appears that the ALJ failed to properly consider the opinion of ARNP Reuter.

      While explaining that the limitations identified in the "paragraph B" criteria at step three did not constitute an RFC assessment and that the mental RFC assessment at step four requires a more detailed analysis of the areas of mental functioning, the ALJ seemed to simply rely upon his findings at step three rather than discuss the evidence of record in conducting a more detailed assessment to determine Plaintiff's RFC (Tr. 13-14, 17). *See Schink*, 935 F.3d at 1269 (acknowledging that the RFC determination requires a "more detailed assessment" of a claimant's mental functioning than the broad categories in paragraph B). Further, the ALJ's reference to "the large body of evidence showing grossly normal mental function during the majority of the period at issue" (Tr. 17) does not accurately reflect the evidence of record nor, even if true, preclude a finding that Plaintiff suffered from a debilitating mental illness. *See Simon*, 7 F.4th at 1106. As in *Simon*, office visit notes reflecting Plaintiff's mood and affect as "appropriate" or that "no abnormal mental health

findings were noted" do not establish that Plaintiff does not suffer from debilitating mental illness. *Id.* Chronic mental disorders "are characterized by unpredictable fluctuation of their symptoms, and thus it is not surprising that even a highly unstable patient will have good days or possibly good months." *Id.* (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). For those who suffer from chronic mental disorders, "'a snapshot of any single moment says little about [a person's] overall condition,' and an ALJ who relies on such snapshots to discredit the remainder of a psychiatrist's findings demonstrates a 'fundamental, but regrettably all-too-common, misunderstanding of mental illness.'" *Simon*, 7 F.4th at 1106 (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (alteration in original). Like the claimant in *Simon*, Plaintiff's diagnoses caused Plaintiff to experience more serious symptoms than those acknowledged by the ALJ.

To summarize, prior to his involuntary admission in June 2020, Plaintiff presented to the Westside Medical Care clinic with no complaints or symptoms of anxiety or depression and showed appropriate affect and demeanor, normal speech pattern, and grossly normal memory in January 2019 (Tr. 592-93). The following month, however, Plaintiff was evaluated for a single episode of mild depression, indicating that the depression had been present for the past several years (Tr. 595). Plaintiff also reported current affective symptoms of increased anxiety over the past few weeks that affected his daily living and led him to believe he was experiencing panic attacks (Tr. 595). Upon examination, he showed appropriate affect and demeanor, normal speech pattern, and normal thought and perception (Tr. 597). The

11

next month, he returned for treatment of his depression, stating that his anxious mood and anxiety had improved after starting Klonopin and that his family noticed that he was coping better (Tr. 599). He presented with appropriate affect and demeanor, normal speech pattern, and grossly normal memory at that time (Tr. 601). Later, in August and November 2019, Plaintiff again followed up for treatment for his depression (Tr. 602, 606). He reported feeling a mild degree of depression, but that he was doing well without any significant affective symptoms, and showed appropriate affect and demeanor, normal speech pattern, and grossly normal memory (Tr. 602-609). His current medications included Celexa (Tr. 602-09). Following that, in April 2020, Plaintiff sought to establish care with a primary care physician (Tr. 616-17). He reported a history of depression, that he ran out of Celexa a few days prior to the appointment, that he was not feeling well and would like to go back on Celexa, and a history of anxiety disorder and panic disorder for which he took Klonopin (Tr. 616).

Subsequently, in early June 2020, Plaintiff decompensated and, as a result, was involuntarily admitted to the Largo Medical Center following statements regarding wanting to harm himself (Tr. 533-34, 538, 547-562). During his time there, Plaintiff's mental status examination notes included findings showing dysphoric mood, somewhat constricted or flat affect, anxious psychomotor state, inhibited attitude, circumstantial thought processes, adequate attention, adequate concentration, disheveled appearance, and poor or limited insight and judgment, though later treatment notes indicated a normal or euthymic mood and appropriate appearance with fair insight and fair judgment but still with mildly constricted affect, anxious

psychomotor state, and inhibited attitude (Tr. 532, 551, 556, 560). After remaining in the medical facility for several days, Plaintiff was discharged and put on medication, including Seroquel and Trileptal (Tr. 533-34, 538, 547-562, 577).

Following his discharge, Plaintiff sought treatment within a couple weeks at Centerstone regarding his mental impairments, meeting with a licensed mental health counselor and medical assistant (Tr. 660-64). Plaintiff informed Richard Whitton, LMHC, that he experienced racing thoughts, fast speech sometimes, impulsivity at times, hopelessness, thoughts of death, poor concentration, restlessness, anxiety, panic attacks, obsessive thoughts, agitation, irritability, sleep issues, flashbacks, nightmares, thoughts of certain traumatic events, and mania (Tr. 660). LMHC Whitton described Plaintiff's mood as anxious, depressed, and irritable; affect as depressed and anxious; appearance as casual; thought content as appropriate; orientation as fully oriented; and safety as expressing current homicidal or suicidal ideation (Tr. 660). LMHC Whitton noted that Plaintiff appeared to have Bipolar 1 Disorder, MRE Manic, severe, and PTSD, although Plaintiff did not meet the criteria for a Baker Act, so LMHC Whitton recommended Plaintiff for therapy and medication management (Tr. 660). Yvonne Kuhn, MA, listed similar findings, including an anxious, depressed, irritable mood; depressed and anxious affect; neat appearance; appropriate thought content; full orientation; and denial of current homicidal or suicidal ideation (Tr. 661-63). MA Kuhn also noted that Plaintiff stated he was depressed, had anxiety, had obsessive thoughts, was irritable, experienced mood swings, was unable to concentrate, had constant nightmares, and experienced sadness and racing thoughts all the time (Tr.

661). Although Plaintiff denied suicidal and homicidal ideations, he expressed that he thought his family would be better off without him if was not there (Tr. 661).

Less than a week later, Plaintiff met with Deborah Lorshbough, ARNP, at Centerstone (Tr. 577-78). At that time, Plaintiff exhibited signs of anxiety and mania, evidenced by sweating, trembling or shaking, feelings of loss or control, expansive or irritable mood, flight of ideas, and racing thoughts (Tr. 577). ARNP Lorshbough noted that Plaintiff's attitude and behavior showed signs of being normal, mood was normal, speech was normal, thought content was appropriate, recent and remote memory were intact, and he was fully oriented (Tr. 578). ARNP Lorshbough classified Plaintiff's symptoms as borderline and continued Plaintiff on medication (Tr. 577-78). During his appointments for his physical impairments in June 2020, Plaintiff reported anxiety and depression while demonstrating full orientation, appropriate mood and affect, normal insight, and normal judgment upon examination (Tr. 579-91).

Thereafter, in July 2020, Plaintiff sought treatment for his physical impairments, reporting and being assessed with depression but not anxiety and being observed as fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 645-50). In August 2020, Plaintiff presented to ARNP Reuter exhibiting signs of anxiety and mania, as evidenced by feelings of losing control and difficulty falling and staying asleep (Tr. 621). ARNP Reuter indicated that Plaintiff's attitude and behavior showed signs of being restless, his mood was anxious, his speech was normal, his thought content was appropriate, his insight was good, his judgment was good, his recent and remote memory were intact, and he was fully oriented (Tr.

621). She then noted that Plaintiff was only mildly symptomatic (Tr. 621). While receiving treatment for his physical impairments that month, Plaintiff reported and was assessed with depression but not anxiety and was fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 638-42).

In September 2020, Plaintiff reported to ARNP Reuter that he began seeing a therapist (Tr. 619). During the appointment, ARNP Reuter observed Plaintiff exhibiting signs of anxiety and mania, as evidenced by feelings of losing control and difficulty falling and staying asleep (Tr. 619). ARNP Reuter noted that Plaintiff's attitude and behavior showed signs of being restless, his mood was anxious, his speech was normal, his thought content was appropriate, his insight was good, his judgment was good, his recent and remote memory were intact, and he was fully oriented (Tr. 619). She classified Plaintiff as moderately symptomatic and noted that he felt much improved since starting treatment at Centerstone (Tr. 619). At a subsequent appointment for treatment of Plaintiff's sleep apnea later that month, the doctor noted Plaintiff's history of bipolar disorder, anxiety, and depression and the involuntary hospitalization but also noted that Plaintiff was currently taking all his medications and appeared alert, oriented, and in no acute distress with good eye contact and clear speech upon examination (Tr. 653-54). Shortly thereafter, while receiving treatment for his physical impairments, Plaintiff reported and was assessed with depression but not anxiety and was fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 631-35). Similarly, the next month, during treatment for his physical impairments, Plaintiff again reported and was assessed with depression

but not anxiety and presented as fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 624-28).

Later, in November 2020, during an appointment with ARNP Reuter, Plaintiff reported that he spoke to a counselor, who told him his medication may need to be changed, and he requested more sessions due to stress he was under (Tr. 687). Plaintiff indicated that he did not want to get out of bed in the morning and was "angry all the time" (Tr. 687). According to Plaintiff, he experienced no improvement when he was prescribed Celexa and Prozac (Tr. 687). ARNP Reuter noted that Plaintiff exhibited signs of depression, anxiety, and mania, as evidenced by depressed mood, diminished interest in activities, fatigue, feelings of losing control, difficulty falling and staying asleep, and elevated, expansive, or irritable mood (Tr. 687). Upon mental status examination, ARNP Reuter observed Plaintiff's attitude and behavior as showing signs of being restless; mood was anxious, depressed, and irritable; speech was normal; thought content was appropriate; insight was good; judgment was good; recent and remote memory were intact; and he was fully oriented (Tr. 687). ARNP Reuter found Plaintiff moderately symptomatic and only minimally improved since starting treatment at Centerstone (Tr. 687).

Around the same time, during a therapy appointment at Centerstone with Victoria Jencke, LMHC, Plaintiff reported having a challenging past week, that he had been struggling with anger more recently, and that he thought he needed a medication adjustment (Tr. 667). During the appointment, Plaintiff became tearful while verbalizing his frustrations and lack of motivation to get out of bed and also reported

experiencing a debilitating panic attack that caused him to leave in the middle of a family dinner at a restaurant (Tr. 667). Plaintiff also indicated that he had been feeling "over-emotional" and overwhelmed with stress (Tr. 667). LMHC Jencke noted both that Plaintiff's mood and attitude were tearful and frustrated but also that Plaintiff's mood was depressed, elevated, and congruent and that Plaintiff's affect was appropriate/congruent and depressed (Tr. 667). She also indicated that Plaintiff was fully oriented with appropriate thought process and content and no suicidal or homicidal ideations (Tr. 667-68).

The following week, Plaintiff returned for a therapy session with LMHC Jencke (Tr. 671-72). Plaintiff told LMHC Jencke that his children's busy wrestling schedule that week assisted him in coping better with his depression and that he met with a psychiatrist and had a new medication added with an adjustment to his already established medications (Tr. 671). LMHC Jencke noted that Plaintiff's mood was euthymic and congruent, affect was appropriate and congruent, thought content was appropriate, and he appeared well-groomed and fully oriented with no suicidal or homicidal ideations (Tr. 671).

The next month, Plaintiff sought treatment with ARNP Reuter (Tr. 673-74). Plaintiff stated that he felt he was doing well on his medications but still felt depressed (Tr. 673). ARNP Reuter noted that Plaintiff appeared to be moderately symptomatic but also indicated that Plaintiff exhibited signs of depression, anxiety, and mania, as evidenced by his depressed mood, diminished interest in activities, fatigue, feelings of losing control, and difficulty falling and staying asleep (Tr. 673). Her mental status

examination notes documented that Plaintiff's attitude and behavior showed signs of being restless, his mood was depressed, his speech and thought content was normal, his insight was good, his judgment was good, his recent and remote memory were intact, and he was fully oriented (Tr. 673).

Plaintiff's treatment notes for his physical impairments from November 2020 to April 2021 show similar fluctuations in his symptoms. For example, in November 2020, Plaintiff received treatment for his physical impairments and did not report anxiety or depression and was fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 689-92). At the next appointment for his physical impairments in December 2020, Plaintiff reported anxiety and depression but again was found fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 697-700). During the next follow-up appointment for his physical impairments in January 2021, Plaintiff reported anxiety and depression but was fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 705-07). The February 2021 follow-up appointment yielded the same complaints and results (Tr. 711-14), but, during the March 2021 and April 2021 follow-up appointments, Plaintiff denied anxiety and depression and was fully oriented with appropriate mood and affect, normal insight, and normal judgment (Tr. 719-22, 727-31).

While the ALJ need not refer to every treatment note, the ALJ must demonstrate that he considered Plaintiff's medical condition as a whole. *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (stating that

the ALJ need not cite every piece of evidence in the record but must demonstrate he or she "considered the claimant's medical condition as a whole"); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*) (finding that there is no rigid requirement that the ALJ specifically address every piece of evidence in the decision). In this instance, the ALJ failed to provide enough discussion at step four to permit meaningful judicial review. As a result, following the Eleventh Circuit's recent guidance regarding mental impairments, remand is required. Namely, taking everything together, I cannot conclude that substantial evidence supports the ALJ's RFC finding, as it is unclear whether the ALJ properly considered Plaintiff's mental impairments, including the episodic nature of his bipolar disorder, or whether he therefore properly considered ARNP Reuter's opinion regarding such impairments in the RFC assessment. *See Schink*, 935 F.3d at 1269 (acknowledging that the RFC determination requires a "more detailed assessment" of a claimant's mental functioning than the broad categories in paragraph B); *Gilet v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-457-NPM, 2022 WL 950639, at *4-5 (M.D. Fla. Mar. 30, 2022) (remanding where ALJ failed to provide enough information in decision regarding what limitations he attributed to claimant's bipolar disorder); *Pinder v. Comm'r of Soc. Sec.*, Case No.: 6:20-cv-1164-MRM, 2021 WL 6062378, at *3-6 (M.D. Fla. Dec. 22, 2021) (finding ALJ's decision unsupported by substantial evidence where ALJ failed to consider fluctuations in symptoms and objective medical findings related to bipolar disorder). For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

*IV.*   *Conclusion*

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 28th day of December, 2022.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of Record